Judge Bibb,
delivered the opinion of the court.— After a statement of the case, in substance as above, it proceeded as follows:
Upon the subject of the complainant’s claim, two points have been principally urged.
1st. That the entry of Tabb, is vague and uncertain, and therefore void.
2dly. Although there is no proof of the complainant’s having altered the entry; yet, as he claims by his own shewing, a part of both entries, and exhibited in his bill, the entry as altered, with full knowledge of the alteration ; that therefore, he has made void any equitable claim to which he might otherwise have been entitled.
The first question, is, must these entries of Tabb be, adjudged vague and uncertain ? We say entries, because the entry for the 5,000 acres calls for that of the 10,000 acres, and the latter must therefore be taken in conjunction with the former. If the beginning corner to these entries be given, and the quantity to be laid off is also considered as definite, the calls for course and distance, as a base whereon to construct a figure with two right angles, would appear, of themselves, special■ and precise. But ought this postulatum to be granted ?
By the act of the Virginia legislature establishing the. land-office (a), the holder of a treasury warrant is required to “ direct the location thereof so specially and pre-ciselij as that others may be enabled, with certainty, to. *ocate other warrants on the adjacent residuum.” A reference to obscure and hidden objects, known to the locator only, and without proper directions for finding them; could not satisfy these requisitions of the law, how precisely soever the figure of the land may be described, when the beginning is ascertained. For such a reference to obscure objects, although it would enable, the locator himself to appropriate the adjacent residuum, would not enable others to do it. An obligation to avoid; such a location, would be as unreasonable and as unjust as the laws of that tyrant who promulgated his intentions only by writing in the smallest hand, and hanging them on inaccessible heights. To enable others, therefore, to. *271 appropriate the adjacent residuum, with certainty, locations must have proper reference to known and certain objects, which shall serve as indices to the particular tract of land intended to be located.
This embraces the doctrine of notoriety, which is interwoven with the principles and rules of decision, upon conflicting claims ; derived through different channels from the commonwealth ; and which resembles, in some feint degree, the doctrine of notice to purchasers deriving title through the same channel.
To this test the complainant’s claim must be brought —Do the expressions in the entries of Tabb properly direct to the beginning assumed ? Were the calls in these locations, calculated, in the year 1782, to apprize the holder of another warrant, that the land in controversy was appropriated, provided he made reasonable inquiry ? Hinkston, Stoner, and Harrod’s lick, being confessedly notorious, at and before the date of Tabb’s entries, are therefore fit subjects to be used in general description, or in special direction : and it must also be confessed, that two ash saplings, surrounded by the other trpes of the forest, and by a wide and extended canebrake also, distinguishable from other saplings only by the letter K. marked upon them with a knife, and by the circumstance of their growing from one root, are objects of no natural notoriety ; and can give notice to other holders of land warrants, only in proportion to the accuracy with which they may have been described, by proper reference to objects of notoriety; or to their own acquired notoriety ; or to acombination of both.
Let us inquire, first, whether the assumed beginning has been described by the locations of Tabb, by the just relation it bears to those objects which are refered to. Secondly, what notoriety it had acquired at the date of the locations.
The first expressions in the entry of 10,000 acres, “ to be laid off in one or more surveys, lying between Sto-ner’s fork and Hinkston’s fork,” at first blush, seem intended only as general direction, to lead into that section of the country which is embraced between those two streams ; but when combined with the distance from Harrod’s lick to one part of Hinkston, and with the length of the lines of a survey required, so as to give the quantity, they have been brought to bear on the entry, *272 on either side, as giving aid in upholding or destroying, If they are to he considered as informing us that the whole survey is to lie between Stoner and Hinkston ; and that one or other of the lines of 1000 poles in length, is to be terminated by Hinkston, then to include the land in contest, the extremity of the survey would be nearer to Harrod’s lick, than the beginning called for, in the proportion of five and one-eighth, or five and a half, to, six or seven. In fact, such a construction would make the beginning in north latitude, somewhere not exceeding 646 poles, or two miles and six poles from Harrod’s lick. This is upon the supposition that the figure of the survey is to be right angles ; and for no more nor less than the quantity located. But if the expressions “ nearly parallel to the begiuningline,” as used by the locator, are to be considered as flexible, so as to accommodate themselves to the meanders of Hinkston ; or that the quantity of land must be diminished by the nearer approach of Hinkston to Harrod’s lick, than was expected ; then it cannot be ascertained how much the line upon the given course N. 45 E. is to be shortened, until the beginning is found.
If the beginning on/y, and not the whole survey, is to be between Hinkston and Stoner, then, those expressions can be of no other assistance, than to confine the search to the south side of Hinkston. But, in either of those cases, a locator, searching for the beginning, would receive no additional light, whereby to find it; but would be perplexed and confused by their inconsistency with the next expressions in the entry.
These are, “ Beginning about six or seven miles nearly N. E. of Harrod’s lick.”
If a locator, giving the utmost latitude to these expressions, had taken upon himself to search within the quadrant from north to east, the space between a circle with a radius of six miles, and another with the radius of seven miles, making Harrod’s lick the common cen-tre, he would not have found these ash saplings ; the radius of them, from the lick, being only three miles and one hundred and fifty poles. And yet to require such diligence of him, would be unreasonable, and not warranted by the expressions of the land law : and it is evident that the distance alone from the lick, without any course, would impose upon a locator a search for the *273 beginning, not less unreasonable. It is necessary then; to affix some reasonable bounds to the expressions “ nearly N. £.” and K about six or seven miles.” These, it must be admitted, are uncertain ; but the locator is endeavoring to arrive át a certain beginning ; and if these expressions can, by reasonable construction, point the way, he ought to have the benefit of them.
What course from Harrod’s lick should be called “ nearly N. E. P” This question is of importance ; because á small variation at the outset, will causé a great departure at the distance of six or seven miles; An expedient heretofore adopted in like cases, is, to reject the expression “ 'nearly.’1'1 Then say, for experiment, it shall be N. 45 E. Having fixed the course, where is the search to begin upon this line ? About six or seven miles from Hitrrod’s lick. This course leaves the ash saplings claimed for the beginning, at a considerable distance in longitude east of the line, arid only three rriiles and orie hundred and fifty poles from the lick, instead of six Or seven miles. So that when you arrive at those two points, all search in the mean distance between thein must be unavailing.
The complainant hath made it evident by testiriiony, that the land between iiarrod’s lick and the ash saplings, was set with cane, in the year 1782 ; and that distances, in travelling through cane, have been mistaken by one third, one half sometimes, and at other times and places, have been accurately estimated ; and this he proposes as a corrective to the mistake in the distance called for. To this it may be answered, that in proportion td the difficulty of travelling in cane, the labor of searching was increased ; and in that proportion was the demand for verity of description increased. But the locator has entirely forgotten to refer us in his entry, to canebrake standard measure, instead of the one used by sur-, veyors and geonietricians.
In progressing oh this N. E. line at the distance df 5 1-8 miles arid six poles, we córne to Hinkston. Here, another perplexity is to be solved. The expedient fallen upon with respect to course, has not answered the intent. If he is bound still to persevere in the search, what course shall he go ? It may be answered, one that shall give the distance. Shall we go to the right hand or to the left ; up Hinkston or down it, to take its bearings ? Sup* *274 pose either will do, how far shall we wander to the right or to the left ? The complainant now shews upon the plat, that N. 51 1-2 E. three miles and 150 poles from Harrod’s lick, will lead to his beginning. This is a very different direction from that given by the location. Rut the amendment comes too late, after a controversy has arisen ; it ought to have been contained in the location, for the purpose of avoiding controversy.
From this labyrinth we must seek to be extricated by some clue given by the location, and not by extraneous matter, irrelevant thereto. The next and iast calls calculated to lead to the beginning, and not before examined, are, “ at two white-ash saplings from one root, with the letter K. marked on each of them, standing at the forks of a zvest bra?ich of Hinkston’s fork, and on the east side of the branch.”
Here again the complainant would give to his ash saplings a kind of magnetism, which shall, unknown and unseen, attract us to them from every possible point, and against every contrary vibration, which false and defective calls may have given. It has been contended, that having arrived at Hinkston, the inquirer should take up Clear creek; and that searching on the east side-thereof, and at the forks, he would readily find the trees called for. This direction is obtained only by a positive view of the trees, as represented on the plat; not by any reasonable construction of the entry itself; nor from any reasonable presumption, from the information acquired, by having pursued the other calls as far as Hinkston ; nor by any application of the terms used in the entry, to things as they existed; or as they were then known.
The distance to Hinkston has been ascertained to fall short of the distance called for, from Harrod’s lick, as the beginning ; but by going up Clear creek, every hundred poles would approach nearer to Harrod’s lick. The Ñ. W. course crosses Clear creek, and strikes Hlnkstpn about midway between the mouths of Clear creek and Brush creek ; the latter, although not a West branch, is as much entitled to the appellation as the former, and would be more likely to give the distance called for.
But the call to run from the beginning N. 45 E. down the branch, has been here brought ia aid. When *275 the beginning is found, this might have something to do with the identity of it; but even in that respect it is not true, when applied to the ash saplings* or Clear creek ; or at best but equivocal: for a true liné N. 45 E. leaves. Clear creek entirely, about 100 poles from the saplings, and crosses Brush creek some distance above the mouth.
But the entry calls for a west branch of ffinkstort. Now Clear creek had acquired that name, and was notorious thereby, previous to the date of the entry, and ever after. If he intended his beginning to be on that stream, he ought to have called it by the name of Clear creek, and not a xoest branch ; or to have given it a description which could not mislead. This omission is an insuperable objection to the descriptive part of this entry, and closes the remarks upon such calls as may be supposed to be directory.
Such an omission constituted a principle i.n the,decision of Herndon and Hogan (a), in the year 1786, and has been acted upon ever since — Vide Speed andWil-son (b) — Higgin's heirs vs. Darneal, &c. (c) — Doran vs. Ashley, &c. (d) — Melton vs. Arnold — Jones, &c. vs. Craig — Smith vs. Smith, &c. (e). The court is therefore of opinion that there is no description in the entry, by reference to Hinkston, Stoner, or Harrod’s lick, which could have led a subsequent locator, using reasonable diligence, to the ash saplings taken for the’ beginning of the survey upon the entry ; but, on the contrary, such are their relative position to those objects, and such the conflict between the expressions in the entry and the truth, assuming these saplings as the beginning, that even after the trees were found, he might well have hesitated about the identity.
It may not be improper here to remark, that the ash trees about 29 yards from these ; and those on Brush creek ; have no consideration with the court; farther than as they furnish evidence, without travelling out of the record, that the growth of two ash saplings from one root, is not a singular phenomenon in nature.
These untrue and misleading descriptions could only be counterbalanced by clear proof of general notoriety in the ash trees,individually and apart from the other calls. A great effort has indeed been made, to prove the notoriety of them. A specimen of the questions and answers on that subject, will serve to illustrate this branch of the case.
*276 Question by Thomas, the complainant, to William Clinkingbeard, in a deposition taken at the forks of Clea.r creek : “Was not this place generally knovyn, and thp saplings marked with the letter K. to the hunters gt Strode’s station, as a place of notoriety, as early as the years 1781 and 1782?” A. “ Yes.”
To Isaac Clinkingbeard, at the same place : “Were not these saplings, and this fork of the creek, a place of notoriety, amongst the people of Strode’s station, as early as the fa}lof 1782?” A. “The forks of the creek were, and I have heard the ash saplings talked of as early as that time, I think.” This witness says, in two of his depositions, of June 1802, and of January 1804, “ that he thinks he saw the ash saplings as early as 1783, or thereabouts, and might have seen them soonerand in another deposition of March 1804, he says, “ I think I saw them as early as the beginning of 1782, upon second recollection.”
To Joshua Stamper, at the same place : “ How early do you think these trees were generally talked of ip Strode’s station by the hunters ?” A. u- In the year 1781; or at farthest, early in 1782.” “ Did not this place become more talked of in consequence oi these trees being marked here ?” A. “ When we were de-: scribing the place, we would sometimes speak of the forks of the creek ; and sometimes of the marked saplings at the forks of the creek ; at -which, Í think, both the forks of the creek and the marked saplings were notorious amongst the hunters at Strode’s station.”
This witness further says, upon interrogations, that the; saplings were described as standing at the forks of Clear, creek ; and that the forks were generally so called by the hunters at Strode’s station, as early as 1781, and, ever since. These three witnesses, in their depositions, all unite the trees and the forks of Clear creek ; and say, when they heard the trees spoken of by the hunters and people of Strode’s station, they were described as standing at the forks of Clear creek. These are the only witnesses who have attempted to ascribe notoriety to, these trees ip 1782; and by such questions, and others pf the like kind, they were led to speak on the subject.
These truths clearly result from their depositions— that their recollections, as to the time when these trees were talked of at Strode’s station, were very dull, and *277 pn that subject were stimulated by leading questions ; that the forks of Clear creek (a subject not mentioned in the entry) is always united with the ash saplings, in the minds of these witnesses. When we compare these depositions with those of Edward Wilson, Ralph Morgan, Jeremiah Poor or Power, James Duncan, Frederick Couchman, and John Donaidson, all of whom resided at Strode’s station, before the date of Tabb’s entries, (exctpt Poor, who did not settle thereuntil 1783) and were well acquainted there before and after Tabb’s entries were made ; the preponUeration of evidence is very clear, that these ash saplings had not acquired notoriety before 1783, if so early ; and that the forks of Clear creek were not known as such before that time, but that Clear creek was. The concurrence of ah the witnesses pn either side, who speak of the notoriety of Harrod’s lick, Hinkston, Stoner, and CJear creek, is strong and impressive of notoriety in its proper signification ; and satisfies the mind, that such notoriety existed before the date of the entries in question : but notoriety of the ash saplings themselves, divested of the name of Clear creek, and of the forks of Clear creek ; cannot be said to have been even glanced at by the witnesses.
Having ascertained that the forks of Clear creek were not known by that name until 1783, it is evidently com sequent from the depositions of the two Clinkingbegrds and Stamper, that the trees themselves were not talked of as being known, at an earlier period, at Strode’s station. The locator in his entry alludes to two ash saplings, by expressions which do not imply any notoriety of the trees, but evidently evincing that his expressions are all to be taken together, first as directory, and then as identifying, Proper names are used to signify known objects ; such as Ohio, Louisville, Harrod’s lick, &c. —obscure and unknown objects are signified by reference to those which are known ; as a spring running into south Elkhorn, about six miles from the main forks of Elkhorn (a) — two ash saplings N. E. from Harrod’s jick six miles, &c.
From this, it is not to be infered that if an object phould be called for by name, and also by description, which should prove false, that the attempt at description fhall preclude proof of the notoriety of the subject by |he name ; nor yet, that accurate description cannot *278 SUpply the omission of name, without some additional cah. There is no proper name, or other substitute, by which this entry could be connected with, or applied to, the ash saplings, ns a place of notoriety, even at this day.
The uncertainty as to course, might have been supplied by a call for the trace (a) ; and the branch of Hinkston, well supplied by a call for Clear creek. When we look at the uncertainty and false description which holds their places, the omission of both must bp considered as fatal.
Here it is proper to take some notice of those cases cited by the counsel for the appellee, as having some bearing on the entry. Young, &c. vs. Boston (b), in this court, brought into view Egan’s pre-emption, which had a call for “ about three quarters, or one mile, west of Joseph Conway’s, to include his improvement.” Joseph Conway’s improvement and Egan’s improvement were not more than half a mile asunder. It appears from, the recital made by the court of the assignment of error, that the notoriety of Egan’s improvement was not questioned ; and the court proceed to lay down the entry ; Egan’s improvement to be barely included, “ by the survey opposite the centre of its east line ; because, otherwise,” (that is, but for the proximity of the two improvements) “ it ought to have been at least three quarters of a mile west of Conway’s improvement.” The court regard the distance there, not in searching for the improvement, but in describing the figure and situation the entry is to have, after the beginning or improvement is ascertained ; and then the distance is made to yield only so far as to include the improvement, giving efficacy to the balance, and thereby extend the survey west from Conway’s.
Johnson vs. Nall (c). This entry expressed to lie “ in the main fork of Elkhorn, about six miles from the forks, to include an improvement made by Nathaniel Randolph, and two springs, the one large, the other small, waters of the south fork of Elkhorn.” The court say, the main forks was a place of general notoriety,' from whence the calls of the location would lead up ' south Elkhorn, till the locator “ came to this branch, it being the first about the distance called for ; on pursuing the branch, he would be lead to the improvement and large spring ; and in searching around, in the dis *279 tance of 100 yards, he would find the small one : in pursuing this rout, he would find the distance from the fork to correspond nearly with that described in the entry,” &c.
But suppose the branch had not been the first about the distance, but only three or four miles from the fork, and another branch put into Elkhorn, more likely to answer the distance, what must the court have said ? The difference between the case of Johnson and Nall, and the one sub judice, needs no commentary.
Bryan and Smith vs. Bradford and Gatewood, Hughes’s Rep. p. 55. B: yan’s certificate, and entry thereof with the surveyor, express to lie “ On the head of Cane run, including a spring which sinks after running about three hundred yards, near a pond, about five miles from Bryan’s station.” The court say, “ The head of Cane run, and a spring which sinks after running about three hundred yards, near a pond, and about four or five miles from Bryan’s station, were known to the generality of those who were conversant in the vicinage of Bryan’s station, when these locations were made. And though the head of Cane run might have been uncertain, if this call had stood alone ; it appearing that this water course had two or more forks ; yet as it is called for in connection with a spring of a description which fits none other in that quarter, the head of Cane run intended, is thereby ascertained to be the head of the north fork ; more especially, as it further appears, that this was the only place, ar that Time, to which the name of the head of Cane run had been appropriated ; and that none of the heads of Cane run would so well fit the distance of five miles from Bryan’s station,” &c. and therefore they sustained the locations.
Taylor vs. Kincaid, &c. (a), spring term 1807. This controversy arose upon an entry made spring 1780, expressing to lie “ on the head of Willis Lee’s branch, four miles from • Leesburg, to include the head of said branch,” &c. The court thus expressed themselves ; “ The witnesses on both sides concur in proving that Willis Lee’s branch was generally known and called by-that name', by those who xuere conversant in that quarter of the country, at and before Reuben Young’s entries, or either of them, were made. It is also proved by a number of xvitnesses that Willis Lee and others, somé- *280 time in the year 1775, made an improvement at trid spring; where George Carlyle lives ; which is the place How contended for as the head of Willis Lee’s branch } and from that timé the spring was called Willis Lee’s big spring, and the branch flowing from it Willis Lee’s branch. From these facts, this court is of opinion, that Willis Lee’s branch was an object of sufficient notoriety to furnish a guide to Subsequent locators.”
The mistake of distance is then stated ; the head of Willis Lee’s branch, instead of four, being not less than eleven miles from Leesburg. “ Yet (say the court) front the degree Of notorietv which it is proved Willis Lee’s branch had acquired, as earlv as the fall of 1779, an inquirer could not have been led astray by that mistake and then the opinion of the general court, in supporting the entry, is approved.
How widely different are these cases, as to' the correspondence of the names of things assumed, (to givé particular and special locality,) with the expressions of the locations themselves, from the case now under consideration.
In Taylor vs. Kincaid &c. the branch called for was improved upon and named by Willis Lee and others, in 1775, Upwards of four years before the date of the entries, and was known as such ever after.
In Tabb’s entries, the ash saplings were marked in August 1781 — -the entries made in December 1782. The saplings have no name to distinguish them from other forked ash saplings, except obscure cuts UpOn the bark.
The branch runs through the country, to be seen a mile or two below, and traced to the head.
The ash saplings stand upright in a forest, and a canebrake, not to he seen or distinguished, but upon near approach.
Willis Lee’s branch was called for by the appropriate name.
The branch on which the saplings stand, had an appropriate well known name, but it was not called for.
The mistake in distance, from Lee’s town, could not lead astrav, because of the degree of notoriety which Willis Lee’s branch had acquired.
The distance from Harrod’s lick would lead far as* tray ; because the saplings had acquired no notoriety, *281 and were combined with other delusive and perplexing calls. Upon the whole, the court can only perceive, that in the cases before noticed, the principles upon which the present case has been examined, were acknowledged : there the entries stood up to the test — here the entries cannot bear it.
The additional responsibility devolved on us by the refusal of the other judges to adjudicate herein, has cornmanded this most deliberate and serious attention ; wherelipon it is the opinion of the court, clearly and decisively, that Tabb’s entries depended on the beginning called for, to give specialty and precision to the locations ; that the directions to find it, would not point to the beginning' assumed, or contended for ; but were delusive, and calculated to lead astray therefrom, those who should pursue the directions ; that the ash saplings had not notoriety by themselves, or in conjunction with any of the other calls in the entries, at the date thereof, so as to countervail the uncertain and illusive description thereof ; or to give a locator or holder of anothep warrant* reasonable notice of the land intended to be appropriated by the said entries ; and especially as to.íh^uland in controversy ; that they cannot be sustained as locations required and permitted by law ; and therefore that the complainant has no equity in his bill.
This decision on the first question, renders any decision on the second point, and other incidental questions* unnecessary. — —-Decree reversed.

ofía^of vir" gteb.p. 95,§ 3 —Ait so/ Ken. ¾¾? j ’

¿J Hughes a*

t¿) Pr, Dec. 9*> 94-

[c) Ante

¿) Ante 139,

 Ante 190.

 yohnfon •vs. Naliy Pr. Dec. 393.

la) See Smith vs. Smith, Sc. ante 190.

⅞) Pr. Dec. 32 7'

d Pr, Dsc. 393-

 Ante 8z*